**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOHN RUDISH II,              ) | CASE NO.  4:13-cv-02525 |
|         Plaintiff,     ) | |
|                ) | JUDGE DONALD C. NUGENT |
|   v.                ) | |
|                ) | MAGISTRATE JUDGE GREG WHITE |
| CAROLYN W. COLVIN,    ) | |
|    Acting Commissioner of Social Security  ) | **REPORT & RECOMMENDATION** |
|          Defendant.    ) | |

Plaintiff John Rudish II ("Rudish") challenges the final decision of the Acting
Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a
Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II and Title
XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*.  This matter is before
the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the
Commissioner be VACATED and the case REMANDED.

**I.  Procedural History**

On September 27, 2010, Rudish filed an application for POD and DIB alleging a
disability onset date of April 17, 2008.  (Tr. 10.)  His application was denied both initially and
upon reconsideration.

On May 17, 2012, an Administrative Law Judge ("ALJ") held a hearing during which
Rudish, represented by counsel, and an impartial vocational expert ("VE") testified.  On June 19,
2012, the ALJ found Rudish was able to perform a significant number of jobs in the national
economy and, therefore, was not disabled.  The ALJ's decision became final when the Appeals

Council denied further review.

## II.  Evidence

**Personal and Vocational Evidence**

Age forty-five (45) at the time of his administrative hearing, Rudish is a "younger person" under social security regulations.  *See* 20 C.F.R. § 404.1563(c).  (Tr. 17.)  Rudish has a limited education and past relevant work as a carpenter and laborer.  *Id.*

## III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Rudish was insured on his alleged disability onset date, April 17, 2008, and remained insured through the date of the ALJ's decision, June 19, 2012.  (Tr. 12.)  Therefore, in order to be entitled to POD and DIB, Rudish must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period

---

[1]  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

2

precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV.  Summary of Commissioner's Decision

The ALJ found Rudish established medically determinable, severe impairments, due to degenerative disc disease and depression; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 12-13.)  Rudish was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  (Tr. 14, 17.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Rudish was not disabled.  (Tr. 17-18.)

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

### *Treating Physician and Functional Capacity Evaluation*

Rudish argues that the ALJ discounted the opinion of his treating physician, Patricia Matto, D.O., without giving good reasons for doing so.  (ECF No. 14 at 9-12.)  Furthermore, Rudish also asserts that the ALJ improperly rejected the results of a functional capacity evaluation.  *Id*. at 12-13.  The Commissioner argues Dr. Matto's opinion was not well-supported by objective clinical findings and the limitations she ascribed to Rudish were inconsistent with other substantial evidence of record.  (ECF No. 16 at 8-10.)  The Commissioner also maintains

4

that the ALJ was not required to give any special deference to the functional capacity evaluation performed by a non-medical source. *Id*. at 10-11.

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some

---

[2] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

reason for the agency's decision is supplied.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.  Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406.  The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.*  It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Rudish asserts that the ALJ failed to give appropriate weight to the opinion of his treating physician, Dr. Matto.  Specifically, Rudish points to a Medical Source Statement completed by Dr. Matto on September 16, 2010.  (Tr. 289-296.)  Therein, Dr. Matto indicated that she saw Rudish at least once every three months since a work related injury sustained in May of 2008. (Tr. 289.)  Dr. Matto noted that Rudish suffered from lumbar disc protrusion causing "[c]onstant low back pain with intermittent spasm." *Id.*  She explained that Rudish's pain was "daily" and

6

precipitating factors included prolonged sitting, standing, and walking. *Id.* The pain "waxes + wanes in intensity daily." *Id.* Dr. Matto identified positive signs such as reduced range of motion in the lumbar spine and in both hips, abnormal posture, trigger points, tenderness, muscle spasm, abnormal gait, and positive straight leg raising test. (Tr. 289-290.) She further noted that range of motion testing was limited by pain. (Tr. 290.) Dr. Matto, however, did not believe that emotional factors contributed to Rudish's functional limitations. *Id.* She found that Rudish's pain was severe enough to constantly interfere with attention and concentration. *Id.* Dr. Matto observed that the side effects of Rudish's medications included dizziness and drowsiness. (Tr. 290-291.) Dr. Matto did not indicate how long she believed Rudish could sit continuously, but did note that he would need to alternate postures by walking for 15 minutes. (Tr. 291.) She did, however, state that Rudish could sit for a total of four hours in an eight-hour work day. (Tr. 292.) In what seems somewhat contradictory, Dr. Matto indicated that Rudish could stand or walk for 15 minutes before alternating postures by sitting or lying down, but then indicated alternating postures was not medically indicated. (Tr. 292.) She stated that Rudish could stand or walk for a total of two hours in an eight-hour work day. *Id.* Dr. Matto also averred that Rudish would require a one-hour long rest break in a reclining or supine position in addition to regularly allowed rest breaks in order to relieve pain. (Tr. 293.) She opined that Rudish could lift up to 20 pounds occasionally and up to 10 pounds frequently. (Tr. 294.) Finally, Dr. Matto believed that Rudish would be absent from work more than three times per month due to his impairments, which had persisted at their present level for the past two years. (Tr. 296.)

The ALJ addressed Dr. Matto's opinion as follows:

As for the opinion evidence, Patricia Matto, D.O. notes that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, sit for the 4 hours total, and stand and walk for 2 hours with additional rest breaks than a normal workday allows, only occasional balancing, and never stooping while missing more than 3 absences from work. (5F/7-15). I give this opinion little weight in this case because, not only is it incomplete, Dr. Matto fails to provide specific clinical findings used to develop her opinion. Actually, the medical evidence and his extensive list of daily activities establishes that he can sustain full-time employment.

(Tr. 16.)

The Commissioner does not challenge Rudish's assertion that Dr. Matto qualifies as a

treating physician.  (ECF No. 16 at 8-10.)  The ALJ, therefore, was required to provide good reasons for rejecting the limitations she assessed.  Without any meaningful analysis or discussion, the ALJ offered four reasons for effectively rejecting Dr. Matto's opinion: (1) it was "incomplete;" (2) it did not reference specific clinical findings; (3) it was inconsistent with the medical evidence; and, (4) it was inconsistent with Rudish's daily activities.  (Tr. 16.)

The first reason offered by the ALJ for rejecting Dr. Matto's opinion – that the assessment was incomplete – is without merit.  Rudish argues that rejecting the opinion of treating source merely because there is one, minor omission on the form is "not a factor considered under the regulations, and is otherwise an insufficient reason here."  (ECF No. 14 at 11.)  As accurately pointed out by Rudish, "the only section of the eight page opinion that is incomplete is question 11A which asks the physician for her opinion regarding Plaintiff's ability to *continuously* sit during a workday."[3]  *Id.*, citing Tr. 291 (emphasis added).  This Court also agrees with Rudish that this omission is rendered largely immaterial by the remaining portions of Dr. Matto's opinion regarding Rudish's abilities to sit during an eight-hour workday.  Notably, Dr. Matto opined that Rudish could sit for a cumulative total of four hours in a workday, a limitation incompatible with sedentary work.  (Tr. 292.)  Dr. Matto also explained that Rudish would periodically need to walk for 15 minutes.  (Tr. 291.)  The Commissioner, conversely, cites no authority suggesting that a minor omission in the completion of a form is a valid reason to reject a treating source's opinion in its entirety.

The ALJ's second reason for rejecting Dr. Matto's opinion was that it allegedly failed to provide specific clinical findings used in developing the opinion.  (Tr. 16.)  This statement is simply inaccurate.  Dr. Matto's opinion unequivocally indicates that the limitations assessed therein are based on the diagnosis of lumbar disc protrusion, as well as the following clinical observations: reduced range of motion in the lumbar spine and in both hips; abnormal posture; trigger points; tenderness; muscle spasm; abnormal gait; and, positive straight leg raising test.

---

[3]  The Court has reviewed the entirety of Dr. Matto's opinion and this is indeed the only portion that was not completed.  (Tr. 289-297.)

(Tr. 289-291.) To the extent the ALJ intended to suggest that Dr. Matto failed to reference MRIs or x-rays confirming the diagnosis of lumbar disc protrusion, the ALJ has failed to explain how such an omission undermines Dr. Matto's opinion, especially where the ALJ found Rudish's severe impairments included degenerative disc disease. Furthermore, an MRI from May 2008 indicates that Rudish had moderate disc space narrowing at L4-L5, as well as L5-S1, with small disk protrusion at both levels. (Tr. 265.) While the opinion of a treating physician must be based on sufficient medical data and upon detailed clinical and diagnostic test evidence, the failure of a treating source to allude to such evidence does not necessarily undermine his opinion where it is not seriously disputed that such evidence is contained in the record.

The ALJ's third reason for rejecting Dr. Matto's opinion, that "medical evidence ... establishes that [Rudish] can sustain full-time employment," is conclusory and devoid of explanation, thus depriving this Court of the ability to conduct a meaningful review. The ALJ failed to reference specific medical evidence of record that was inconsistent with Dr. Matto's opinion. The ALJ mentions the opinions of three mental health consultants that are wholly irrelevant to the physical limitations assessed by Dr. Matto. The ALJ also rejected as not coming from an acceptable medical source the examination findings of an occupational therapist which were arguably even more restrictive than those of Dr. Matto. (Tr. 17.) The only other medical evidence concerning Rudish's physical functional limitations cited by the ALJ are the opinions of two State Agency medical consultants, whose findings are admittedly less restrictive than Dr. Matto's findings. *Id.* The ALJ appears to have ascribed some weight to these opinions, though he incorporated a more restrictive lifting restriction while expressly rejecting their opinion that Rudish required a sit/stand option.[4] *Id.* However, contrary opinions of State Agency physicians do not constitute "good reasons" for rejecting a treating physician's assessment. This Court has previously ruled that an ALJ cannot base his or her rejection of a treating physician's opinion

---

[4] It is not entirely clear to this Court what medical evidence of record supports the ALJ's conclusion that Rudish can sit for six hours without the need for a sit/stand option, as such a finding is not supported by the opinions of Dr. Matto, the two State Agency doctors, or the occupational therapist.

upon its inconsistency with the opinions of non-treating physicians.  *See Brewer v. Astrue*, 2011 U.S. Dist. LEXIS 64262, 2011 WL 2461341 at \*7 (N.D. Ohio Jun. 17, 2011) ("To do so would turn the treating physician rule on its head [as] [i]t is well established that the opinions of non-examining physicians carry little weight when they are contrary to the opinion of a treating physician."), *citing Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (finding that the opinion of a non-examining physician "cannot provide a sufficient basis for rejecting the opinions of plaintiff's treating physicians"); *Fife v. Heckler*, 767 F.2d 1427, 1431 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant.")  As recently explained by the Sixth Circuit Court of Appeals:

> Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors.  Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion.  Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013).

Accordingly, inconsistencies with the opinions of non-treating State Agency physicians do not constitute "good reasons" for rejecting the opinion of Dr. Matto, a treating source.  Therefore, this Court cannot accept the ALJ's blanket assertion that Dr. Matto's opinion was inconsistent with the medical evidence.

The fourth and final reason given by the ALJ for rejecting Dr. Matto's opinion was that Rudish's daily activities are consistent with full-time employment.  Nevertheless, the ALJ does not explain how Rudish's daily activities undermine Dr. Matto's opinion.  Elsewhere in the opinion, the ALJ references Rudish driving from Buffalo, New York on one occasion in 2008 and the fact that Rudish continues to drive.[5]  (Tr. 15.)  It is unclear how these activities

---

[5] It is unclear where exactly Rudish drove to from Buffalo, New York in April of 2008.  (Tr. 251.)  However, it does bear noting that Rudish's alleged onset date is April 17, 2008.  The medical record, dated April 26, 2008, states that "PT injured low back approx 10 days ago.

10

undermine Dr. Matto's opinion that Rudish can sit no more than fours in an eight-hour workday and needs to be able to stand up and walk around periodically.  Rudish stated that he can only drive short distances, 20 to 30 minutes, due to pain.  (Tr. 199, 217.)  Dr. Matto also noted on August 27, 2008 that Rudish was "on his roof and almost fell off."[6]  (Tr. 298.)  The ALJ also cites a portion of the record indicating Rudish was anxious to do yard work in May of 2010 and that he has a riding lawnmower.  (Tr. 15, 302.)  It is unclear whether Rudish did in fact perform any yard work around this time, though the Court fails to see how operating a riding lawnmower is indicative of functional abilities greater than those assessed by Dr. Matto.  The ALJ further references a treatment note indicating that, in late December 2009 or early January 2010, Rudish was under his Jeep for five hours trying to perform some repairs when it broke down out in the cold.[7]  (Tr. 15, 306.)  Finally, the ALJ noted that Rudish occasionally helped with meals, washed dishes, made his own coffee, and let the dogs outside.  (Tr. 15.)  Regardless of whether all of these episodes ever occurred, the Court finds that isolated actions which are not necessarily incompatible with a treating source's functionality assessment do not constitute good reasons for rejecting said assessment.

The mere fact that Rudish is able to perform the activities discussed in the paragraph

---

[Patient] states pain subsided and he was doing well until last weekend when he drove from Buffalo and pain began to reoccur."  (Tr. 251.)  The Court finds it thoroughly unreasonable to discredit the treating physician's opinion based on an activity that occurred two years before the opinion, that appears to be an isolated occurrence, and which also appears to be the activity which triggered the claimant's injuries resulting in the disability claim.

[6]  At the hearing, the ALJ suggested that Rudish told Dr. Matto he was "working on the roof" with his brother, which Rudish denied.  (Tr. 44.)  Rudish denies ever being on a roof at his house, which contradicts Dr. Matto's treatment note.  (Tr. 44, 298.)  Nonetheless, it is unclear why the ALJ inferred from the treatment note that Rudish was *working* on his roof, as nothing in the treatment note suggests as much.  The ALJ's statement in the decision that Rudish "*climbed* on top of his roof in August 2010" is also the product of inference unsubstantiated by the treatment note itself. (Tr. 298) (emphasis added).  There is simply no indication in the record as to whether Rudish climbed up his roof or whether he was able to access his roof from a window or door.

[7]  At the hearing, Rudish stated that he was merely outside sitting in a chair telling his brother, who is not a mechanic, what to do with the vehicle.  (Tr. 44.)

above in spite of his alleged pain is not necessarily indicative of an ability to perform substantial gainful activity for eight hours a day.  *See, e.g. Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("[t]he fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing, and floor sweeping does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity.  Such activity is intermittent and not continuous, and is done in spite of pain suffered by [claimant]."); *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963) ("It was not necessary that [the claimant] be bedridden or wholly helpless in order to establish his claim for benefits.")  None of the activities mentioned by the ALJ were described as continuous.  While a claimant's activities of daily living may justify rejecting the opinion of a treating source under certain circumstances, the ALJ's recitation of Rudish's activities was not entirely accurate.  Moreover, the ALJ did not explain how these activities were inconsistent with Dr. Matto's assessment.  Absent such explanation, this Court cannot conduct a meaningful review and, therefore, cannot affirm the ALJ's decision.

Finally, the Commissioner raises several arguments in her brief regarding purported inconsistencies between Dr. Matto's opinion as to Rudish's functional limitations and her treatment notes, which allegedly reveal a lack of physical examinations.  (ECF No. 16 at 9-10.)  However, the ALJ did not offer this explanation in his decision.  Accordingly, these arguments constitute *post hoc* rationale that this Court cannot rely on to supplement the reasoning set forth in the ALJ's decision.  *See, e.g., Bable v. Astrue,* 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939 (2001)); *Sarchet v. Chater,*78 F.3d 305 (7th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).

The Court finds that the ALJ erred by failing to give good reasons for rejecting the limitations assessed by Dr. Matto.  As such, in the interests of judicial economy, the Court declines to address Rudish's remaining assignments of error.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not

supported by substantial evidence.  Accordingly, the decision should be VACATED and the case

REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent

with this Report and Recommendation.

s/ Greg White<br>
United States Magistrate Judge

Date: November 4, 2014

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**